IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA HOLDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-409-MTS |
| | ) |
| TARGET CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Before the Court is the Motion for Summary Judgment of Defendant Target Corporation. (Docket No. 44). Upon the Court's review and consideration of the filings of the parties, the Motion is hereby **GRANTED IN PART** and **DENIED IN PART**.

**Factual and Procedural Background**

On March 10, 2021, Plaintiff Teresa Holder ("Plaintiff") went shopping at a store owned by Defendant Target Corporation ("Defendant") located at 1701 South Yale Avenue in Tulsa, Oklahoma. (Docket No. 51-1 at 3, 5). Plaintiff had shopped at the store on several occasions, but because of the COVID pandemic, this was her first time visiting the store since March of 2020. *Id.* at 5, 7. Prior to shopping, Plaintiff went to use the women's restroom, which she had used on previous trips to the store. *Id.* at 8. Before entering the restroom, Plaintiff noticed a sign above the door handle depicting a method for pulling the door open without touching the handle with her hands. (Docket Nos. 44-3; 48 at 4; 51-1 at 8–9). Viewing the sign as a COVID safety suggestion, Plaintiff put her entire right hand and wrist through the enclosed area of the door handle. (Docket Nos. 44-5 at 12–13; 51-1 at 9–10). When she pulled the door open, it easily swung toward her, and she was unable to pull her arm out immediately. (Docket No. 51-1 at 11, 18). Plaintiff might have expected the door to be heavier than it was. (Docket No. 44-5 at 8). Her arm became stuck

in the door handle and was twisted in a counterclockwise position for a few seconds, which caused a pop and pain in her forearm and wrist. (Docket No. 51-1 at 19, 22). As she shopped, Plaintiff experienced pain in her whole arm and into her shoulder. *Id.* at 22. She reported the incident to one of Defendant's employees, who completed a guest incident report. (Docket No. 57-1).

On October 16, 2020, Defendant installed the restroom door pull used by Plaintiff in March of 2021 because of COVID. (Docket Nos. 48 at 2; 51-5 at 3). Pursuant to instructions in the work order, the existing door handle was completely removed, and a new handle was installed with the "hook side" in a downward position. *Id.* at 4. It was recommended that a previously provided decal be displayed with the door handle to demonstrate the operation of the new handle. *Id.* For the women's restroom at the Yale store, Defendant placed the decal above the door handle. (Docket No. 44-3 at 2). The decal showed a partial image of the handle with use of the left wrist to open the door, demonstrated by an arrow pointing left. *Id.* Defendant has not had any other reports of injuries or incidents involving the door handle since it was installed in 2020. (Docket Nos. 44-8 at 3; 44-7 at 10–11).

During her deposition, Plaintiff explained that on the day of the incident the door handle appeared the same as it had on prior occasions, except for the sign. (Docket No. 51 at 8). The door handle was not hidden or concealed and was open and obvious for anyone to see. (Docket No. 44-5 at 13–14). Plaintiff only placed her arm in the enclosed portion of the door handle because of the sign. *Id.* at 14. She testified the sign did not depict the entire door handle, and she did not understand that the sign was directing her to pull the handle with her wrist using the hook underneath the handle. (Docket No. 51-1 at 13, 15). In fact, from the angle she approached the handle, Plaintiff did not even notice the hooked opening on the bottom. *Id.* at 18. Although the sign directed use of the left wrist to open the door, Plaintiff used her right arm because the door

was hinged on the right side and opened from left to right. (Docket Nos. 44-5 at 12–13; 51-7 at 4). Plaintiff believed it was not normal to use her left arm to open a door that was hinged on the right. (Docket No. 51-1 at 12–13). She did not believe it was a different door handle, but that Defendant added a sign that did not relate to the door. *Id.* at 20. Plaintiff does not know of anyone else who received a similar injury from this type of door handle at Defendant's store. (Docket No. 44-5 at 10).

On March 8, 2023, Plaintiff filed her lawsuit in the District Court for Tulsa County, Oklahoma, bringing a claim of negligence against Defendant and seeking various remedies, including punitive damages. (Docket No. 2-2). On September 20, 2023, Defendant removed the case to this Court. (Docket No. 2). Defendant filed its Motion for Summary Judgment (Docket No. 44) on September 16, 2024, to which Plaintiff filed her Response (Docket No. 51) on October 7, 2024. Defendant filed its Reply (Docket No. 59) on October 21, 2024. The Motion is ripe for this Court's review.

## **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue of material fact exists when "there is sufficient

3

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Applied Genetics v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also* Fed. R. Civ. P. 56(c)(1)(A), (e)(2), (e)(3). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Thus, "[i]n a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). Although a court may consider materials in the record other than those cited, Federal Rule of Civil Procedure 56(c)(3), the inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## Discussion

Defendant argues that it owed no duty to warn or protect Plaintiff from a dangerous condition because the undisputed facts establish the door handle, and its accompanying sign, were open and obvious to Plaintiff and did not constitute a hidden danger.[1] (Docket No. 44 at 12–18). Additionally, Defendant contends it is entitled to summary judgment on Plaintiff's request for

---

[1] In its Motion, Defendant also asserts that Plaintiff cannot bring an ordinary negligence claim, and to the extent Plaintiff is raising a products liability claim, such a claim fails for several reasons. (Docket No. 44 at 18–21). However, because Plaintiff alleges a premises liability claim and did not raise a products liability claim (Docket Nos. 2-2; 51 at 9–12), the Court does not address either issue in this Opinion and Order.

4

punitive damages because the evidence does not support a punitive damages award in this case. *Id.* at 21–23. Plaintiff responds that there are material questions of fact regarding whether the door handle was open and obvious because the handle and sign considered together had a deceptively innocent appearance of safety. (Docket No. 51 at 9–12). Further, Plaintiff asserts that if the Court denies Defendant's motion, it should reserve any decision regarding whether to instruct the jury on punitive damages until it has heard the evidence at trial. *Id.* at 12–14.

A.    **Premises Liability**

Because this case is before the Court based on diversity jurisdiction, Oklahoma law applies. *Martinez v. Angel Expl., LLC*, 798 F.3d 968, 973 (10th Cir. 2015) (internal citations omitted). "[T]o prevail on a negligence claim, a party must prove (1) existence of a duty on the part of the defendant to protect plaintiff from injury; (2) defendant's breach of the duty; and (3) injury to plaintiff proximately resulting therefrom." *Maxville v. Target Corp.*, Case No. 17-CV-00609-TCK-FHM, 2018 WL 4289322, at *2 (N.D. Okla. Sept. 7, 2018) (citing *Ritch v. Carrabbas Italian Grill, L.L.C.*, 719 F. App'x 838, 840 (10th Cir. 2018)).

The extent of the defendant's duty depends on the plaintiff's status as either a trespasser, licensee, or invitee.[2] *Hodges v. Wal-Mart Stores East, L.P.*, Case No. 16-CV-195-JED, 2017 WL 1658890, at *1 (N.D. Okla. Apr. 30, 2017) (citing *Wood v. Mercedes-Benz of Okla. City*, 336 P.3d 457, 459 (Okla. 2014)). Invitees, or those "who use[] [a] premises of another for the purpose of a common interest and mutual advantage[,]" are owed the highest duty of care. *Wood*, 336 P.3d at 459 n.6 (citing *Brown v. Nicholson*, 935 P.2d 319, 321 (Okla. 1997)). As such, "[a] business owner owes a duty to exercise ordinary care to keep its premises in a reasonably safe condition for use of its invitees and a duty to warn invitees of dangerous conditions upon premises that are either known

---

[2] Plaintiff's status as an invitee is undisputed. (Docket Nos. 44 at 13; 51 at 2).

or should reasonably be known by the owner." *Phelps, et al. v. Hotel Mgmt., Inc.*, 925 P.2d 891, 893 (Okla. 1996) (citing *Taylor v. Hynson*, 856 P.2d 278, 281 (Okla. 1993); *Williams v. Safeway Stores, Inc.*, 515 P.2d 223, 225 (Okla. 1973)).

While an owner has a duty to warn of "dangerous conditions, including hidden dangers, traps, snares, pitfalls and the like which are not known to the invitee[,]" there is no duty to warn of dangers which are "open and obvious." *Phelps*, 925 P.2d at 893; *see Sholer v. ERC Mgmt. Grp., LLC*, 256 P.3d 38, 43 (Okla. 2011). In other words, "the owner 'need not guard the invitee against dangers so apparent and readily observable that the conditions should be discovered.'" *Hodges*, 2017 WL 1658890, at *1 (quoting *Sholer*, 256 P.3d at 43). However, the Oklahoma Supreme Court has rejected the open and obvious defense in certain cases "where the condition or defect was visible but unseen by the plaintiff[,]" reasoning that:

> A danger need not be totally or partially obscured from vision or withdrawn from sight to be considered hidden. Rather, it may encompass a condition presenting a deceptively innocent appearance of safety, cloaking a reality of danger. It may also arise from circumstances diverting the plaintiff's attention from the danger. Therefore, not every "observable" condition is "open and obvious" as a matter of law. Whether harm from an open and obvious defect may be actionable depends on an objective due care standard, *i.e.*, whether under similar circumstances a prudent person would be able to see the defect and avoid being injured. Nevertheless, it is well established in our jurisprudence that, where conflicting evidence is presented on the issue of the open and obvious nature of a defect, the question must be resolved by the trier of fact. What would normally be considered an open and obvious danger may become a latent defect because of the conditions existing at the time of injury.

*Sholer*, 256 P.3d at 43–44. In other words, "the characteristic of an item as being observable . . . cannot, by itself, require that item to be declared as a matter of law an open and obvious danger." *Zagal v. Truckstops Corp. of Am.*, 948 P.2d 273, 275 (Okla. 1997). Therefore, "[i]f . . . conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a 'deceptively innocent appearance,' or its extent could not be anticipated, neither

6

the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law." *Jack Healey Linen Serv. Co. v. Travis*, 434 P.2d 924, 928 (Okla. 1967); *see also West v. Spencer, et al.*, 242 P.3d 545, 548 (Okla. Civ. App. 2010).

Having reviewed the photographs and other evidence in a light most favorable to Plaintiff, the Court concludes that a genuine issue of material fact exists as to whether the restroom door handle and accompanying sign constituted an open and obvious danger as a matter of law. Plaintiff testified that, although she observed the door handle and sign, she did not notice the hooked opening of the handle and believed the handle was unchanged since she last used it. (Docket No. 51-1 at 8, 18). Further, she testified that she did not understand the sign placed above the door handle. *Id.* at 13, 15, 20. More specifically, she did not understand: (1) why the sign instructed the use of the left wrist to open a right-hinged door; and (2) that the wrist was to be inserted through the hooked opening at the bottom of the handle. *Id.* Although the door handle and sign were observable, reasonable minds could differ as to whether the combination of the handle and sign presented a "deceptively innocent appearance" of safety. Moreover, a reasonably prudent juror could find that Plaintiff's attention may have been diverted considering all of the circumstances, such as the angle at which she approached the door handle, her need to use the restroom, and concerns in adhering to recommended COVID protocols. Thus, the Court finds that the openness and obviousness of the danger cannot be decided as a matter of law, but is instead a question of fact for the jury.

**B.      Punitive Damages**

Oklahoma law provides that punitive damages may be awarded "(1) where the jury finds by clear and convincing evidence that the defendant has been guilty of 'reckless disregard for the rights of others;' or (2) where the jury finds by clear and convincing evidence that the defendant

has acted 'intentionally and with malice towards others.'" *Roberson v. Wal-Mart, Inc.*, Case No. CIV-21-657-PRW, 2022 WL 2874715, at *5 (W.D. Okla. July 21, 2022) (quoting Okla. Stat. tit. 23, § 9.1).  Thus, "punitive damages are *only* allowable under [Okla. Stat. tit. 23,] § 9.1 when, at a minimum, there is competent evidence of a reckless disregard by the defendant of the plaintiff's rights from which malice and evil intent may be inferred." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005) (emphasis in original).

Moreover, "[t]he Oklahoma punitive damages statute does not preclude a trial court at the summary judgment stage from determining whether the requisite evidence exists which would warrant the issue of punitive damages to proceed to trial." *Newsome v. Tull*, No. CIV-18-791-HE, 2019 WL 5197567, at *2 (W.D. Okla. July 22, 2019) (citing *Estrada v. Port City Props., Inc.*, 258 P.3d 495, 504 (Okla. 2011)).  The issue "is regularly addressed [by federal district courts] at summary judgment." *Roberson*, 2022 WL 2874715, at *5 (quotation omitted).  A court's role at the summary judgment stage is to "determine whether *any competent evidence* exists which would warrant submission [of] the question of punitive damages to the jury." *Id.* at *5 (quoting *Estrada*, 258 P.3d at 504 (emphasis in original)).

In the Petition, Plaintiff alleges "the intentional, wanton, and reckless conduct of Defendant in disregard of Plaintiff was conducted with full knowledge in that Defendant knew, or should have known, of the severe adverse consequences of its actions[,]" and "[s]uch actions were detrimental not only to Plaintiff but to the public at large."  (Docket No. 2-2 at 4).  Plaintiff also contends she is entitled to punitive damages "to set an example to others similarly situated that such inexcusable conduct will not be tolerated in our community." *Id.*  Defendant asserts that at her deposition, however, Plaintiff testified she was seeking punitive damages "because she didn't know if she was the only person hurt by the door handle, and because [Defendant] was negligent."

8

(Docket No. 44 at 22) (citing Docket No. 44-5 at 11–12).  She further explained that "it didn't matter if she was the only person injured by the door handle, the door handle wasn't safe and that is enough to warrant punitive damages against [Defendant]." *Id.* (citing Docket No. 44-5 at 12–13).

In response to Defendant's argument, Plaintiff asserts the evidence supports that "at the minimum, [Defendant] recklessly used signage and handles that harmed its invitees[,] . . . did not obtain studies, did not use experts, and the corporate representative did not even know if there were internal discussions related to installing the handle and sign." (Docket No. 51 at 14; *see also* Docket No. 51-5 at 3–5).  Accordingly, Plaintiff requests that the Court reserve its ruling on whether to instruct the jury on the issue of punitive damages until all the evidence is submitted at trial.  *Id.*

Considering the record evidence in the light most favorable to Plaintiff, the Court finds the evidence does not support an inference of reckless disregard by Defendant.  The evidence shows that, although Defendant's corporate representative did not know if Defendant obtained studies or expert consultation regarding the safety of the door handle prior to installation or had any discussions with outside parties regarding its use, Defendant had no other reports of injuries or incidents involving the door handle since it was installed in 2020.  Moreover, Plaintiff's own testimony supports, at most, an inference of negligence by Defendant and does not rise to a level sufficient to support her request for punitive damages.  Defendant is therefore entitled to summary judgment as to Plaintiff's request for punitive damages.

## Conclusion

For the reasons explained herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment of Defendant Target Corporation.  (Docket No. 44).  The Court

**DENIES** Defendant's Motion as to Plaintiff's premises liability claim and **GRANTS** the Motion regarding Plaintiff's request for punitive damages.

IT IS SO ORDERED this 8th day of November, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT